UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| SCOTT CRAE, )<br>)<br>Plaintiff, )<br>vs. )<br>)<br>)<br>MICHAEL J. ASTRUE, Commissioner )<br> of the Social Security Administration, )<br>)<br>Defendant. ) | 1:10-cv-0595-SEB-TAB |

### Entry Discussing Complaint for Judicial Review

Scott Crae ("Crae") seeks judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"), 42 U.S.C. § 301, *et seq.*

For the reasons explained in this Entry, the Commissioner's decision must be **remanded for further proceedings.**

### I. Background

Crae applied for SSI on December 22, 2004, and for DIB on January 12, 2005, alleging an onset date of July 12, 2004. His applications were denied initially and upon reconsideration. His request for a hearing before an Administrative Law Judge ("ALJ") was granted, and a hearing was conducted on January 25, 2008. Crae, his father William Crae, a medical expert and a vocational expert testified. The ALJ denied benefits on March 14, 2008. Crae's request for review by the Appeals Council was granted. The Appeals Council ordered consultative physical and mental examinations. On June 27, 2008, the Appeals Council remanded the decision to the ALJ for further proceedings and a new decision. A second hearing was held on March 25, 2009. Crae was present, accompanied by his attorney. Crae, a medical expert and a vocational expert testified. Medical and other records were introduced into evidence. The ALJ denied Crae's applications on May 14, 2009. On April 14, 2010, the Appeals Council denied Crae's request for review, making the ALJ's decision final. *See Getch v. Astrue,* 539 F.3d 473, 480 (7th Cir. 2008). This action for judicial review of the ALJ's decision followed. The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

The ALJ's decision included the following findings: (1) Crae met the insured status requirements of the Act through December 31, 2009; (2) Crae had not engaged in substantial gainful activity since July 12, 2004, the alleged onset date; (3) Crae had severe impairments consisting of lumbar spondylosis and residuals of lumbar fusions, obesity, and depression, and he had also been diagnosed with alcohol dependence; (4) Crae did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) Crae had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) with the following exertional, postural, and environmental limitations: he could walk and/or stand for a total of two hours in an eight-hour work day and could sit for a total of six hours with the option to stand for five minutes each hour at the work station and the minutes need not be used consecutively; he could lift and/or carry, push and/or pull five pounds frequently and up to ten pounds occasionally; he could use his upper extremities to grasp large objects and for fine finger manipulations; he could occasionally climb stairs and ramps; he could occasionally balance, stoop, crouch, kneel, and crawl; he could not climb ladders, scaffolds, or ropes; he must avoid working at unprotected heights or around dangerous and moving machinery; he must avoid concentrated exposure to cold, heat, wetness, humidity, and vibrations; and he was limited to simple and repetitive tasks; (6) Crae was unable to perform any past relevant work; (7) Crae was born on April 4, 1971, and was 33 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date; (8) Crae had at least a high school education and was able to communicate in English; (9) the vocational expert did not identify any vocationally relevant skills from Crae's past work history that would be transferable to other work; and (10) considering Crae's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the regional economy that he could perform. With these findings in hand, and through the application of applicable rules and regulations, the ALJ concluded that Crae had not been under a "disability" as defined in the Act, from July 12, 2004, through the date of the ALJ's decision.

## II. Discussion

### A. Applicable Law

To be eligible for DIB and SSI, a claimant must prove he is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). To establish disability, the plaintiff is required to present medical evidence of an impairment that results "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms." 20 C.F.R. §§ 416.908; 404.1508.

A five-step inquiry outlined in Social Security regulations is used to determine disability status. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005).

The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520, 416.920. A finding of disability requires an affirmative answer at either step three or step five.

*Id*. The claimant bears the burden of proof at steps one through four, and at step five the burden shifts to the Commissioner. *Id.* at 352.

The task a court faces in a case such as this is not to make a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence and otherwise is free of legal error. *Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993). "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)).

### B. Analysis

In this case, the ALJ concluded that although Crae had severe impairments consisting of lumbar spondylosis and residuals of lumbar fusions, obesity, and depression, there were a significant number of sedentary jobs in the regional economy that he could perform. The ALJ determined that Crae could walk and/or stand for a total of two hours in an eight-hour work day, could sit for a total of six hours with the option to stand for five minutes each hour, could lift and/or carry, push and/or pull five pounds frequently and up to ten pounds occasionally, could occasionally climb stairs and ramps, could occasionally balance, stoop, crouch, kneel, and crawl, could not climb ladders, scaffolds, or ropes, and was limited to simple and repetitive tasks. (R. at 23).

Crae argues that the ALJ's decision is not supported by substantial evidence. More specifically, he contends that the ALJ improperly relied on the testimony of medical expert Dr. Hutson, that substantial evidence does not support the ALJ's credibility finding, that the ALJ's RFC assessment contains material inconsistencies, and the Commissioner and Appeals Council made procedural errors.

As to Crae's first claim of error, the ALJ stated that Dr. Hutson "testified that there is no objective medical evidence of the claimant's two spinal fusions." (R. at 28). Crae points to other portions of Dr. Hutson's testimony which reflect that there was a two-level spinal fusion and that objective evidence supported that finding. (Plaintiff's Brief at p.7, citing R. at 755, 759, and 279). Crae argues that because the ALJ misstated and misunderstood Dr. Hutson's testimony about the objective reality of the two fusions, substantial evidence does not support the ALJ's reliance on that testimony.

3

The court does not place great weight on the single sentence challenged by Crae. As noted by the Commissioner, the ALJ did, in fact, acknowledge that the MRI of June 29, 2006, showed a two-level spinal fusion. (R. at 28). The ALJ also credited Dr. Hutson with testifying that "the objective medical evidence of record establishes the claimant has degenerative disc disease of the spine, and his complaints of pain are consistent with the evidence of record." *Id.* The court is not persuaded that the ALJ erroneously evaluated Dr. Hutson's testimony in this regard. What is troubling, however, is the fact that the ALJ did not reconcile with her credibility determination and overall evaluation of the evidence Dr. Hutson's testimony that Crae's complaints of pain were consistent with the evidence of record. This issue is discussed below in the context of the asserted errors in the ALJ's credibility determination.

Crae contends that the ALJ made several errors in making her credibility determination. He asserts that the ALJ erred in finding Crae not credible because he had "not seen a back specialist since his alleged onset date." (R. at 27). He also contends that the ALJ failed to evaluate Dr. Hutson's testimony that Crae's pain complaints were consistent with the record, failed to evaluate Crae's daily activities, failed to evaluate the fact that Crae took Oxycontin three to four times a day for pain, and failed to evaluate the corroborating lay witness statements. Crae also asserts that the ALJ erred in evaluating his use of a cane.

Although the court will "afford an ALJ's credibility finding considerable deference and will overturn it only if patently wrong, the ALJ must consider the claimant's level of pain, medication, treatment, daily activities, and limitations, and must justify the credibility finding with specific reasons supported by the record." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009) (remanded adverse credibility determination not supported by record) (internal quotations and citations omitted). "The ALJ's credibility determinations are entitled to special deference but the ALJ is still required to build an accurate and logical bridge between the evidence and the result." *Castile v. Astrue*, 617 F.3d 923, 929 (7th Cir. 2010). Administrative law judges must "carefully evaluate all evidence bearing on the severity of pain and give specific reasons for discounting a claimant's testimony about it." *Martinez v. Astrue*, 630 F.3d 693, 697 (7th Cir. 2011).

In determining her credibility assessment, the ALJ stated the following:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

(R. at 26-27).

The ALJ's conclusion begs the question: "what statements concerning Crae's symptoms were inconsistent with the ALJ's RFC?" It is apparent that the primary aspect of Crae's testimony that was inconsistent with the ALJ's RFC was that he had to constantly

change positions to try to obtain some relief from pain. The ALJ acknowledged that Crae testified that he always alternated sitting, standing and lying down to try to relieve pain. (R. at 26). Crae also testified that standing and walking more than 10 to 15 minutes at a time and bending or stooping all made the pain worse. *Id.* If these statements were found credible, they would have to have been incorporated into the hypothetical question posed to the vocational expert, and they would have altered the vocational expert's opinion. If these statements were not found credible, the ALJ should have explained why. The ALJ did not discuss the weight she gave to these critical statements.

The Seventh Circuit has recently discussed in more than one decision its view of "boilerplate" credibility assessment language used by ALJs. *See Spiva v. Astrue*, 628 F.3d 346, 348 (7th Cir. 2010)*; Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010).

> The administrative law judge's opinion states that 'after considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments would reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.' This is a piece of boilerplate that appears in virtually identical language in both these cases as well as in a third social security disability case argued to us the same day. It is not only boilerplate; it is meaningless boilerplate. The statement by a trier of fact that a witness's testimony is 'not entirely credible' yields no clue to what weight the trier of fact gave the testimony.

*Parker,* 597 F.3d at 922.

The court finds no significant difference between an ALJ concluding that a claimant's statements are "not entirely credible" and an ALJ concluding that a claimant's statements "are not credible to the extent they are inconsistent with the above residual functional capacity assessment" when, in either case, there is no discussion of the weight given to the pertinent statements. The ALJ has pointed to no evidence that suggests Crae exaggerated the amount of pain he experienced or is a malingerer.

The ALJ properly cited (R. at 24) and discussed the various factors that are to be considered in making a credibility determination. (R. at 24-28). The court agrees with Crae, however, in concluding that despite the thorough discussion of the evidence, the ALJ did not build a logical bridge between that evidence and her conclusion that Crae was not fully credible.

The ALJ appears to have discounted Crae's credibility, in part, because he had "not seen a back specialist since his alleged onset date." (R. at 27). The underlying premise here is that if Crae truly had a significant amount of back pain, he would have seen a back specialist. The ALJ cites no support for this presumption. Indeed, Crae points out that after he underwent two spinal fusions, he sought relief from pain management specialists. The ALJ also acknowledged that Crae took prescribed narcotic medications three to four times

5

a day for pain but he continued to have a pain level of 6 or 7 out of 10. (R. at 26). The ALJ also noted that Crae often changed positions to relieve pain. *Id.* Nonetheless, the ALJ did not explain how these circumstances factored into her finding that Crae was less than fully credible.

While the ALJ acknowledged Dr. Hutson's testimony that Crae's pain complaints were consistent with the record, the ALJ did not explain how that weighed in her credibility determination. The ALJ discussed Crae's daily activities, which consisted of some grocery shopping, washing some dishes, watching movies and television, sitting outside on the porch, and doing some housework around the apartment. *Id.* Again, the ALJ did not state how Crae's minimal activities factored into her conclusion that Crae could walk and/or stand for two hours in an eight-hour work day and could sit for six hours with the option to stand for five minutes each hour. An ability to perform minimal daily activities does not necessarily undermine or contradict a claim of disabling pain. *Carradine v. Barnhart*, 360 F.3d 751, 755-56 (7th Cir. 2004) (ALJ erred when he "failed to consider the difference between a person's being able to engage in sporadic physical activities and [his] being able to work eight hours a day five consecutive days of the week."); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001).

The ALJ acknowledged third party statements by friends which corroborated Crae's statements as to his abilities to function. The ALJ noted that Ms. Olinger had known Crae for 13 years and testified that Crae was unable to sit or stand very long due to back pain and could not perform many activities that he used to be able to enjoy, such as fishing, camping, hiking, and playing games with his children. (R. at 25). The ALJ noted that Mr. Dugger reported that he had known Crae 20 years and worked with him most of his adult life. *Id.* Crae stopped being able to drive a truck at work because he could not sit behind the wheel for hours at a time. *Id.* Ms. Olinger lived with Crae for about a year in the past and Mr. Dugger currently lived with Crae. *Id.* Both individuals had significant opportunities to observe Crae and his deteriorating symptoms. The Commissioner argues that "the ALJ's decision shows that she considered Plaintiff's father's and friends' statements, allowing a reviewer to follow her reasoning." The court disagrees. As argued by Crae, the ALJ properly discussed the third party statements, but she did not explain how she *weighed* the testimony. The ALJ did not state whether she found the statements credible and on what basis. Under these circumstances, the court cannot, in fact, follow her reasoning.

As his final claim of error relating to the credibility assessment, Crae points out that the ALJ erred in evaluating his use of a cane. The ALJ noted Crae's testimony that "he uses a cane for extra support when standing, but no physician prescribed the cane." (R. at 26). As the Seventh Circuit has noted, this is a faulty basis on which to discount a claimant's credibility under circumstances such as these. "Absurdly, the administrative law judge thought it suspicious that the plaintiff uses a cane, when no physician had prescribed a cane." *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010). "A cane does not require a prescription... ." *Id.* Moreover, Crae points out that two treating physicians opined that he needed to use a cane. (R. at 515, 629)(responding "yes" to the question, "[w]hile engaging in occasional standing/walking, must your patient use a cane or other assistive device?").

6

The Commissioner responds that the ALJ gave great weight to the opinions of consulting examining physicians Drs. Issa and Glass and non-examining physician Dr. Hutson, none of whom opined that Crae required a cane. This rationale, however, was not given by the ALJ with regard to her conclusion about Crae's use of a cane, so it is not persuasive. *See Spiva v. Astrue*, 628 F.3d 346, 348 (7th Cir. 2010)("[t]he government's lawyers who defend denials of disability benefits often rely heavily on evidence not (so far as appears) relied on by the administrative law judge, and defend the tactic by invoking an overbroad conception of harmless error.").

In addition, the court notes that Dr. Issa reported that Crae "walked with moderately labored and slow gait because of back pain." (R. at 228). "He had significant difficulty in walking on heels and toes and could not squat at all because of back pain." (R. at 228, 28). In giving "great weight" to the opinion of Dr. Issa, the ALJ should have also factored in these findings rather than merely stating that Dr. Issa "found no focal neurologic deficits" as an explanation for that weight. (R. at 29).

As was true in *Parker*, the court cannot ascertain whether the ALJ thought Crae was a malingerer or not and on what basis. The court cannot trace the path of the ALJ's reasoning to her conclusion that Crae was not fully credible. This issue is pivotal because the vocational expert testified that if Crae's statements as to his limitations and how long he could sit, stand, and walk were true, then Crae could not perform any full-time jobs. (R. at 769). For each of these reasons, the ALJ's adverse credibility finding is not supported by the record and must be remanded for further proceedings.

The court finds it unnecessary to discuss Crae's additional arguments including whether the ALJ made materially inconsistent findings regarding standing and walking, whether the Commissioner and/or Appeals Council made procedural errors, and whether the ALJ failed to comply with SSR 00-4p. For the most part, any such errors, if there were errors, would become moot because of the need for additional proceedings on remand. The case is being remanded because the ALJ's discussion of the evidence does not reasonably lead to the conclusion that Crae had the ability to perform full-time work and her conclusion as stated is not supported by substantial evidence.

### III. Conclusion

For the reasons set forth above, the ALJ's conclusion that Crae could perform a number of unskilled, sedentary jobs is not supported by substantial evidence. The court, therefore, is required to **remand** the case to the ALJ for further consideration. *Melkonyan v. Sullivan,* 501 U.S. 89, 98 (1991) (a court may remand the case after passing on its merits and issuing a judgment affirming, modifying, or reversing the Commissioner's decision, a "sentence four" remand). Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 07/08/2011

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana